Pillans, Cowley & Gresham, of Mobile, for appellant.

153 So. 442

## TEXAS CO. v. HAROLD.

### I Div. 787.

Supreme Court of Alabama.

Dec. 21, 1933.

Rehearing Denied March 22, 1934.

Arthur J. Kearley and Marion R. Vickers, both of Mobile, for appellee.

KNIGHT, Justice.

This is an appeal by the appellant from a judgment of the circuit court of Mobile county, awarding the plaintiff damages in the sum of $4,659.88.

The plaintiff stated his cause of action against the defendant in eight counts. The first six are common counts. In count 7, the plaintiff sought to recover of the defendant $2,412.21, alleged to be due from the defendant to plaintiff "for money heretofore wrongfully collected by the defendant from plaintiff as a tax of one cent per gallon on 241,221 gallons of gasoline purchased by plaintiff of defendant, said sum having been collected by the defendant from plaintiff for the payment of the so-called Text Book Tax under an Act of the 1931 Legislature of Alabama (Gen. Acts 1931, p. 466), which has been declared unconstitutional. And the plaintiff avers that the said sum was collected from him for such purpose and that by reason of said act having been declared unconstitutional said sum has been returned to the defendant, but that the same has not been returned to the plaintiff, and is still due to him and remains unpaid."

The eighth count is similar in averment to the seventh, except it claims the sum of $4,515.77 for money wrongfully collected by plaintiff in the matter of the Sea-Wall Tax, levied against distributors or sellers of gasoline in Mobile county, the act under which it was imposed having been declared unconstitutional.

The defendant filed plea of general issue and two pleas of set-off. The pleas of set-off were, in effect, confessed upon the trial, and no question is here presented based upon any ruling of the court upon said pleas. We may therefore dismiss them in the further consideration of the case.

At the conclusion of the evidence the defendant, in a number of forms, requested the general affirmative instruction in its behalf, which was refused by the court. There was verdict for the plaintiff, over and above the amount claimed by the defendant in its pleas of set-off.

■ For the purpose of determining the correctness of the court's action in refusing the affirmative instruction requested by the defendant, we will consider the evidence in its most favorable aspect for the plaintiff.

It appears from the evidence that the defendant was engaged in the business of distributing gasoline and motor oil in Mobile, Ala., during the years 1930, 1931, and 1932. It brought from without the boundary of the state of Alabama gasoline and motor oils, and stored the same in tanks in Mobile, and from these tanks distributed the gasoline and oil in Mobile county, Ala.

The evidence of the plaintiff tended to show that he was a regular purchaser of gasoline and motor oils from the defendant during the latter part of the year 1931, and up to about February 20, 1932; that he maintained several filling stations in and around the city of Mobile during that period, and sold and delivered to the retail trade the gasoline and oil purchased of the defendant; that he purchased the gasoline and motor oil of the defendant at wholesale price fixed by the defendant, and sold it at such price as he saw fit; that the defendant invoiced the gasoline and oil to plaintiff at so much per gallon; that the prices fluctuated; that at the time the Sea-Wall Act (Loc. Acts 1931, p. 179) and the Text Book Tax Act (Gen. Acts 1931, p. 466) went into effect, the plaintiff was operating filling stations in Mobile, purchasing his gasoline and oil to supply the stations from the defendant; that when the collection of the tax on the gasoline and oil "started, the price was raised one cent for the Text Book Tax and one and one-half for the Sea-Wall Tax, and the Texas Company raised the price to me on gasoline and motor oil." "I (plaintiff) didn't raise the price ourselves on motor oil I had to stand that myself on motor oil; but the price was raised one and one-half cents on gasoline."

Over the objection of the defendant, the

plaintiff was permitted to testify that on the products he bought from the Texas Company, from the time the tax went into effect until the time those acts (Sea-Wall and Text Book) were declared to be unconstitutional, he paid that tax to the Texas Company; that the price of both gasoline and oil was fixed by the company with the tax included.

From the time the Sea-Wall Tax went into effect, until it was declared unconstitutional, the plaintiff bought of the defendant 292,786 gallons of gasoline, and 4,571 gallons of oil; and during the time the Text Book Tax was in effect, the plaintiff bought approximately 236,386 gallons of gasoline of the defendant, and it was agreed in the cause that if the plaintiff was entitled to recover at all in the case, he would be entitled to recover $6,824.18, less the amount defendant would be entitled to under the pleas of set-off.

The Road and Sea-Wall Act, approved July 16, 1931, and the Text Book Act, which went into effect under section 125 of the Constitution July 17, 1931, were read in evidence by the plaintiff. Under the former, the board of revenue and road commissioners undertook to levy an excise tax of one and one-half cents a gallon on the distribution of gasoline and certain motor vehicle fuels and lubricating oils. The act defines who shall be deemed a distributor of such gasoline and oil.

Under the Text Book Act, the board of revenue and road commissioners of Mobile county levied a gasoline tax of one cent per gallon on gasoline. The terms "distributor and retail dealer" are defined by the act.

The evidence shows that the Sea-Wall Act was declared by this court to be unconstitutional and void prior to July 5, 1932, and the Text Book Act was declared to be unconstitutional and void prior to March 1, 1932.

It appears, without dispute in the evidence, that the defendant, under protest, paid into the county treasury, month by month, the tax levied under the two acts; that the plaintiff made no payments to the county, or to any tax officer of the county under said acts, unless it could be said that in paying the tax to the county, the defendant was making payment for plaintiff. That no protest of any nature to said tax or to the payment thereof was filed by the plaintiff.

It appears that when the acts, under which the money was collected and paid into the treasury, were declared to be unconstitutional and void, the plaintiff and defendant each made demand upon the proper authorities of Mobile county for the return of the money. The board of revenue and road commissioners,

under the provisions of section 3144 of the Code, ordered the treasurer to refund to the defendant the money paid by it into the treasury under the provisions of the two acts, and disallowed the plaintiff's demand.

The following agreement entered into between the parties at the trial was read to the jury: "It is agreed between the parties to this cause that the Board of Revenue and Road Commissioners of Mobile County, Alabama, levied taxes under, respectively, the Free Text Book Act, and the Sea-Wall Act according to the provisions of those acts; that the taxes so levied were paid by The Texas Company, respectively, to the special tax collector and to the treasurer of Mobile County, that the taxes paid to the special tax collector were in turn paid over to the treasurer of Mobile County; that thereafter the treasurer of Mobile County, under proper order by the Board of Revenue and Road Commissioners of Mobile County paid back to The Texas Company the amounts that had been paid by The Texas Company under the said levy of the said two taxes mentioned, and that the amounts paid back to The Texas Company aggregated a sum in excess of the amount sought to be recovered by Mr. Harold in this suit. The tax or taxes so paid by The Texas Company into the hands of the county treasurer and paid back by the county treasurer to The Texas Company included returns of taxes made by The Texas Company on all gasoline sold through the stations operated by Mr. Harold as shown by the testimony in this case."

The question of first importance in this case is whether the money refunded to the defendant by Mobile county is held by the defendant to its own use or to the use of the plaintiff, who is suing to get it back.

This question is to be answered by a determination here of the further question, viz., Was the price paid by the plaintiff the composite price to be paid at all events for the gasoline and oil? In other words, Was the item of tax absorbed in a total price to be paid at all events for the gasoline?

The plaintiff, it is true, was allowed over the objection and exception of the defendant to state in terms that he paid the tax to the defendant, but this statement was only a conclusion of the plaintiff, which his testimony, as well as the other evidence in the case, showed was erroneous.

In the case of Peters v. Southern Railway Co., 135 Ala. 533, 33 So. 332, 334, this court held: "When facts are admitted which conclusively establish another fact, the mere de-

nial by a witness of the existence of the fact so established does not and should not create that material conflict in evidence which would require a submission of the issue to the jury." See, also, Richards v. Sloss-Sheffield Steel & Iron Co., 146 Ala. 254, 41 So. 288, where a similar observation is made.

If the tax was absorbed in the total price to be paid at all events, then it would follow, as we see it, that the plaintiff has no right to the money sued for. In other words, if the price charged the plaintiff for the gas was placed at such figures· as to take care of, or absorb the tax, and was to be paid at all events as the selling price of the gas and oil, the plaintiff is without remedy. His position would be no different than that of any other purchaser of goods who has to pay therefor a price, increased by the seller to take care of tariff or other taxes. We take it, in such a case, if the tariff or tax should be held illegal, the purchaser would not have a remedy against the seller to recover the amount of tariff or tax figured by the seller in fixing the price of the commodity.

In the case of Heckman & Co., Inc., v. I. S. Dawes & Son Co., Inc., 56 App. D. C. 213, 12 F.(2d) 154, 155, the facts were: The Commissioner of Internal Revenue promulgated a regulation construing section 628 of the Revenue Act of 1918 (40 Stat. 1116) as imposing upon manufacturers of cider a tax equal to 10 per cent. of the price for which sold. As such a manufacturer the defendant paid to the United States 10 per cent. of the price for which its cider was sold. The defendant sold a quantity of cider to the plaintiff, and added to the selling price the 10 per cent. thus paid to the United States. It was thereafter held that the act of 1918 did not authorize the imposition of a tax on cider. The defendant sought and obtained a refund of the cider tax paid by it. The plaintiff, who had purchased a quantity of defendant's cider with the tax figured and absorbed in the price paid by him, sought a refund from the defendant of the 10 per cent. involved. Failing to get the refund, the plaintiff filed a bill against the defendant seeking to have the money refunded by the government to the defendant impressed with a trust for the benefit of plaintiff, to the extent that it represented taxes paid by the National Beverage Company (plaintiff) to the defendant. The Court of Appeals of the District of Columbia, in the above case, held that the plaintiff could not recover, either

at law or in equity. We quote from the opinion: "Plaintiffs seek in this action to recover from the defendant the amount of the 10 per cent. tax which was· included in the price they paid. The tax, however, under the law, was in no event payable by plaintiffs, but only by the manufacturer; that is, the defendant. There was no tax, or claim of tax, against the plaintiffs. The plaintiffs did not pay the money under duress. There was no governmental claim made against the plaintiffs, and the cases cited by the latter, holding the right to recover for a tax paid under the belief that it was valid when in fact it was void, are not in point. The payment was not made under a mistake of fact. Both parties knew of the enactment of the law. The defendant made the purchase price of the cider greater because of its belief that it had to pay the tax to the government; but, nevertheless, the plaintiffs merely paid the price which the defendant demanded for its goods. Plaintiffs make no claim of any agreement that the defendant was to repay the 10 per cent. in the event that the cider should be held not to be taxable. Under such circumstances, the plaintiffs may not recover."

It appears from the evidence in the instant case, and it is undisputed, that the plaintiff paid no tax to the county under either act; that the tax was paid by the defendant in discharge of its own obligation; that no demand was ever made upon the plaintiff by any governmental agency of the state or county of Mobile for the payment of said tax; the payment made to the defendant by the plaintiff was not made under any mistake of law; both parties knew of the enactment of the two tax laws. The defendant made the purchase price of the gasoline and oil greater because of the tax, and the plaintiff, without protest, paid the defendant the price charged for the gasoline and oil. And we may here add, that the plaintiff passed the gasoline tax on to his customers, and the evidence admits of no other inference than that the plaintiff immediately raised the price of gasoline to his customers to include this tax and collected the same. It does not appear that he has ever made any refund to his customers of the tax, but for aught appearing he has this tax money still in his possession. By this action he seeks to collect it also from defendant.

The case of Lash's Products Co. v. United States, 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251, was one in which a manufacturer sought to recover the amount of certain taxes paid

under the Revenue Act of 1918 (Act Feb. 24, 1919, c. 18, § 628, 40 Stat. 1057, 1116). By section 628, there was imposed on "Soft drinks, sold by the manufacturer, * * * in bottles or other closed containers, a tax equivalent to 10 per centum of the price for which so sold." This tax was paid by the manufacturer, calculated at 10 per cent. of the sum actually received by it for the goods sold. But the manufacturer had notified its customers beforehand that it paid the 10 per cent. tax, and it contended that in this way it passed the tax on and that the true price of the goods was the sum received less the amount of the tax. The court, speaking through Justice Holmes, held: "The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. Heckman & Co. v. I. S. Dawes & Son Co., 56 App. D. C. 213, 12 F.(2d) 154. The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all. * * * The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price. * * * "

The appellee's counsel has brought to our attention the case of Panhandle Oil Co. v. State of Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583, as a case involving the same kind of tax as was attempted to be levied and collected under the provisions of the Sea-Wall and Text Book Acts. While the Mississippi Act may involve the same kind of tax as was involved in the two acts before us, yet the question determined in the Panhandle Case is quite a different question from the one now before us. The Panhandle Case went off on the proposition, that while it was within the power of the sovereign state of Mississippi to impose charges upon an oil company for the privilege of carrying on trade in the state, it may not lay any tax upon transactions by which the United States secures the things desired for its governmental purposes. It was held in that case that the states may not burden or interfere with the exercise of the national power or make it a source of revenue. The right of the United States, it was held, to make purchases of oil for governmental purposes was derived from the Constitution; that it was of no moment in construing the law, and its practical effect, that the number of gallons sold should be made the measure of the privilege tax; and that it was immaterial that the seller and not the purchaser was required to report and make sale

to the state; that the effect of the act was to tax the sale, and that was further, in effect, to tax the United States, to "exact tribute on its transactions and apply the same to the support of the United States." The whole structure of the decision was based upon the constitutional right of the United States to exercise its governmental functions, and carry out its governmental purposes, unimpeded by any state legislation.

There is nothing in the Panhandle Case, supra, which supports the asserted right of the appellee in this case to the money claimed.

The appellee also insists that the case of Wayne County Produce Co. v. Duffy-Mott Co., Inc., 244 N. Y. 351, 155 N. E. 669, is an authority in point, sustaining his contention that he is entitled to recover back the tax money.

We are not prepared to yield our assent to that conclusion. The facts, with reference to the payment of the tax in the Wayne County Produce Case, supra, are different from the facts in the instant case. Chief Justice Cardozo in that case, in speaking of the contract under which the cider was purchased, says: "The contract [between plaintiff and defendant] therefore, was, in effect, this and nothing more, that whatever moneys were necessary for the payment of a tax would be furnished by the buyer. Annulment of the tax after the sale and the delivery of an invoice, but before the payment of the price, would have extinguished the seller's right to exact payment from its customer of the added 10 per cent. Payment, if then exacted, would have been no longer payment for a tax, but payment for something else. By the same token, annulment at a later date, when followed by the refund of the tax and the undoing of the whole transaction between the seller and the government, leaves the money applicable to the same use as if the invalidity of the impost had been declared at the beginning."

It will be noted that Chief Justice Cardozo expressly stated in delivering his opinion: "This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case the buyer is without remedy, though the annulment of the tax may increase the profit to the seller. Moore v. Des Arts, 1 N. Y. 359."

Under the evidence in this case, that most favorable to the plaintiff, we are forced to the conclusion that the plaintiff was not entitled to recover, and that the defendant was entitled to the general affirmative charge

which it requested in writing. For the error in refusing said charge the court committed error necessitating a reversal of the case.

Having reached the above conclusion, it becomes unnecessary to consider the other question presented by appellant for review here.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.