## ZINSMASTER BAKING COMPANY v. COMMANDER MILLING COMPANY.[1]

May 28, 1937.

No. 31,280.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for appellant.

*R. H. Fryberger* and *E. P. Willcuts,* for respondent.

*Pfau & Pfau, Sawyer & Sawyer, Somsen, Dempsey, Johnson & Somsen,* and *Kingman, Cross, Morley, Cant & Taylor, amici curiae,* filed a brief in behalf of the contention of appellant.

HOLT, JUSTICE.

Defendant appeals from the order striking out its answer as sham and frivolous.

To determine the legal sufficiency of the answer it is advisable to give a summary of the issues tendered by the complaint. Plaintiff alleges that during the time referred to in the complaint it was in the business of manufacturing bread and cakes from flour, and de-

[1]Reported in 273 N. W. 673.

fendant was in the business of producing flour from wheat, rye, and other grains which plaintiff bought from time to time. Under the provisions of the agricultural adjustment act of May 12, 1933, 48 St. 31, a processing tax of 30 cents was imposed by federal authority upon every bushel of grain milled. After the tax went into effect and between March 8, 1935, and December 28, 1935, plaintiff purchased 10,094 barrels of flour of defendant on which it paid a processing tax of $13,929.72. It is alleged that said tax amounted to $1.38 per barrel of flour. Plaintiff was a customer of defendant and purchased under contracts many thousand barrels of flour while the act was in effect. On flour delivered by defendant previous to March, 1935, the tax collected from plaintiff was paid over to the collector of internal revenue. It is also alleged that a combination or agreement existed between all processors of grain to charge purchasers of flour with the processing tax in addition to the market price of the grain and thereby to limit competition and force plaintiff to pay, in excess of the cost of the grain and its manufacture into flour, the sum of $1.38 as a tax on each barrel. It is alleged that because of such combination of the manufacturers or processors of flour plaintiff was compelled to pay defendant, in addition to the cost and a fair profit for the milling of the grain, this processing tax, and if defendant is permitted to retain the same it is unjustly enriched at plaintiff's expense. In June, 1935, defendant began suit to restrain the collector of internal revenue from collecting the tax on the ground that the agricultural adjustment act was unconstitutional. On January 6, 1936, the Supreme Court of the United States held the act void. United States v. Butler, 297 U. S. 1, 56 S. Ct. 312, 80 L. ed. 477, 102 A. L. R. 914. And, following that decision, the defendant prevailed in the suit begun by it; and January 27, 1936, judgment was entered enjoining the internal revenue collector of this district from collecting from defendant the said sum of $13,929.72 processing tax which plaintiff had been compelled to pay defendant.

It is to be noted that plaintiff does not plead any contract or express agreement under the terms of which it is entitled to recover. The action is for money had and received. The answer con-

tains a general denial of each allegation not specifically admitted. The incorporation and business of plaintiff and defendant are admitted; likewise the agricultural adjustment act and that the secretary of agriculture has taken the steps alleged in the complaint to make it effective, but denies the validity of the law. It is admitted that there was an attempt to fix the tax at 30 cents a bushel for processing or milling grain into flour; that defendant since July 9, 1933, has been a processor of grain, and made returns under the act to the proper collector up to February, 1936.

The answer then proceeds to aver by way of defense that in June, 1935, it instituted suit against the internal revenue collector for the district of Minnesota to enjoin the collection of the processing tax, obtained a temporary injunction, upon giving bonds in specified large amounts, and that on January 21, 1936, these bonds were annulled by the court on defendant's application and, upon the giving of $1,000 bond, judgment in this defendant's favor was entered. It further alleges that under contracts made with plaintiff for the sale of flour at specified prices it delivered between March 8, 1935, and December 28, 1935, to plaintiff 10,094 barrels of flour; that each of said contracts provided for payment by plaintiff to defendant of a definite price per barrel of flour and there was no allocation in said contracts of any part of said price to any of the many items of costs which may have been given consideration in arriving at the price, such as the cost of overhead, the cost of raw materials, the cost of labor and taxes paid of one kind or another; and that the price specified in each of said contracts was a total and composite selling price per barrel of said flour.

There are two assignments of error, viz.: (a) The court erred in striking out the answer as sham and frivolous, (b) the court erred in directing judgment to be entered for the amount asked in the complaint. The two assignments may be treated together.

2 Mason Minn. St. 1927, § 9259, authorizes the court to strike out sham and frivolous answers. An answer is sham when clearly false, and frivolous when its insufficiency appears from mere inspection. 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 7667, 7668; Pederson v. Eppard, 181 Minn. 47, 231 N. W. 393;

Nelson v. Independent Fruit Auction Co. 176 Minn. 468, 223 N. W. 767. In this last case it is said:

"An answer is sham when it is clearly false and tenders no real issue; and it is frivolous when its insufficiency is determinable upon mere inspection. On the hearing of a motion to strike as sham the court does not try an issue of fact. It finds whether there is a real issue of fact to try. In a motion to strike as frivolous, the question is not merely whether the pleading is demurrable."

It is clear to us that the answer cannot be stricken as frivolous, for it contains a general denial. Furthermore, it pleads as a defense that the 10,094 barrels of flour were sold to plaintiff under contracts at a total or composite price per barrel; that is, there was no allocation of any part of such price for the processing tax. Plaintiff could certainly not have judgment on the pleadings. If not, the answer, if not false, must be conceded to state a defense. Is the answer sham? On a motion to strike an answer as sham care must be used so that the issues tendered for decision on a trial are not disposed of upon affidavits with no opportunity of confronting and cross-examining witnesses. In Western Gravel Co. v. M. J. Nolan Co. 174 Minn. 315, 316, 219 N. W. 148, 149, the court said:

"A sham pleading is one that is false; and to justify the court in striking out a pleading as sham its falsity must be clear and indisputable. Every reasonable doubt must be resolved in favor of the pleading. Where there is a dispute in the affidavits as to the facts upon which the answer must rest, it cannot be said that its falsity is clear and indisputable. Upon such motion the duty of the court is to determine whether there is an issue to try, not to try the issue."

Prior cases are cited fully supporting the statement made.

The affidavits and accompanying exhibits disclose that at least four written contracts were entered into by the parties under which the flour in question was received and paid for by plaintiff. Two of these contracts were entered into before either party, apparently, questioned the validity of the agricultural adjustment act insofar

as it imposed the tax of 30 cents a bushel on milling the grain. These contracts contained a marginal stipulation to the effect that the purchase price named included the present federal process tax, and if, during the life of the contract, the federal authority change the tax, or lay a tax on any other product that enters into the flour, then such additional tax is to be added to the price; and if there is a decrease the seller is to credit the buyer therewith, "when, as and if Buyer makes payment to Seller of the purchase price named herein." In the two contracts entered into after defendant began its suit to enjoin the collection of the tax these marginal stipulations were stricken. About one-half of the quantity of the flour here involved was delivered under these latter contracts. It would seem necessary to take into consideration the difference in the contracts under which these 10,094 barrels of flour were received by plaintiff and paid for in order to determine whether defendant has been unjustly or unconscionably enriched by any of the money secured in virtue of the injunction suit. From the mere inspection of the contracts and the uncontroverted assertions of plaintiff's affidavits, no one can confidently conclude that the allegation of defendant's answer that the sale of the flour was upon a composite price per barrel is false. If it be true that the sale price was a composite price per barrel so that the tax was "buried in the price" under all or any of the contracts involved, plaintiff cannot recover any part of such composite price. Texas Co. v. Harold, 228 Ala. 350, 153 So. 442, 92 A. L. R. 523; Cupples Co. v. Mooney (Mo App.) 25 S. W. (2d) 125; Wayne County Produce Co. v. Duffy-Mott Co. Inc. 244 N. Y. 351, 155 N. E. 669; Heckman & Co. Inc. v. I. S. Dawes & Son Co. Inc. 56 App. D. C. 213, 12 F. (2d) 154; Casey Jones, Inc. v. Texas Textile Mills, Inc. (C. C. A.) 87 F. (2d) 454. We shall not stop to construe either form of contract involved. That must be reserved for the trial court. It is enough to say that in neither set of contracts can it be said that $1.38 of the specified price of each barrel of flour was set apart or allocated to the payment of the government processing tax. There is nothing in the agricultural adjustment act forbidding the processors of grain from passing on to the buyer any part or all of the processing tax,

so plaintiff cannot claim that defendant paid it in behalf of plaintiff. The tax is laid upon the processor. Lash's Products Co. v. United States, 278 U. S. 175, 49 S. Ct. 100, 73 L. ed. 251.

But there are other considerations which show that the answer should not be stricken as sham. While much in the affidavits and exhibits attached would indicate an intention to base recovery upon rights derived from the contract, yet in the brief and in the oral argument the basis of the suit is the unjust enrichment of defendant if it is permitted to retain the $13,929.72, and plaintiff cites Seifert v. Union Brass & Metal Mfg. Co. 191 Minn. 362, 254 N. W. 273. Plaintiff in its complaint recognizes that if it passed on the tax by raising the price of its bakery products it is not in a position to make any claim against defendant. So it is alleged in the complaint that the money sought to be recovered is a tax; that "plaintiff has been compelled to and has, by law and market conditions, absorbed the whole of the amount so paid to defendant as said processing tax, and has not, either directly or indirectly, included the same or any part thereof, either in the price or in the articles or commodities with respect to which the same was collected by said defendant, or in the price of commodities into which the same was manufactured by plaintiff; plaintiff has not passed on said processing tax or any part thereof in any manner to any vendee." This allegation is denied by the answer. An issue is thereby raised which is not properly triable upon affidavits. It is so incredible, to say the least, that a bakery concern such as plaintiff's, should not have converted most, if not all, of these 10,094 barrels of flour here involved into bread and bakery products which had been sold and consumed long before this action was begun. And it is not at all likely that plaintiff neglected to include in the price charged for its products not only the costs of baking and selling the same and a reasonable profit but also the total price paid defendant for the flour, including the processing tax. If it did, a recovery from defendant would be in the nature of an unjust enrichment of plaintiff, unless we can look to the federal "Windfall" Tax Act to properly absorb such enrichment.

But, in any event, plaintiff was not entitled to judgment for the full amount asked and for which judgment was ordered. It is undeniable that defendant went to great expense in the injunction suit which prevented the government from collecting this tax. Had defendant paid the $13,929.72 to the internal revenue collector, plaintiff could have had no hope of collecting a penny by law from defendant. Under a general denial of unjust enrichment, defendant may prove to what extent it has not been enriched. Dennis v. Graf, 31 Wis. 105. Where one has gone into litigation to protect and conserve a fund to which another claims some right, it is but reasonable justice that that other, before being awarded such right, reimburse the one who carried on the litigation and secured or protected the fund. Seastrand v. D. A. Foley & Co. 151 Minn. 441, 187 N. W. 413. Plaintiff prints in the brief a copy of findings of fact by the trial court in Texas in the case of Jones Fine Bread Co. v. Fant Milling Co. in support of its position. Of course, the findings were upon evidence adduced at a trial. But, even upon such findings, there is an allowance for the expenses of the defendant in the suit to enjoin the collection of the tax. The attorneys' fees incurred by defendant in the injunction suit which prevented the money here involved from going into the government treasury must amount to a considerable sum, and the premiums upon the bonds defendant was required to give were no doubt large. So defendant ought to be allowed to dispute the amount of its unjust enrichment.

Other matters are put in issue by the general denial of the answer. The processing tax was fixed at 30 cents a bushel of grain milled. It is general knowledge that wheat may vary in quality so that the same number of bushels do not invariably produce the same quantity in weight of flour. Again, the processing tax is upon the bushel of grain. For every barrel of flour produced a certain quantity of bran and middlings are also produced. Is any part of the processing tax to be allocated to these by-products? We are of the opinion that the general denial of the answer puts plaintiff to its proof as to more than one of the averments of the complaint material both as to a recovery and as to the amount thereof.

Plaintiff has made broad allegations of conspiracy of processors of grain to prevent competition and by threats and duress to force plaintiff to pay high prices. for flour. When, at the argument, plaintiff's attention was called to the fact that such serious charges in the complaint were put in issue by the general denial of the answer, the reply was that these allegations were mere surplusage and should be disregarded in an action for money had and received. It does not appear just and right that a reputable business concern should be permitted to charge another, equally reputable, with such unlawful acts as stifling. competition, threats, and duress, and then have denial of such wrongs stricken and judgment entered against it for many thousands of dollars—not on the ground that the denial of the charges was false, but that the charges of business banditry were surplusage not of any consequence. It would seem but proper that when such serious wrongdoings in a business transaction are charged by a plaintiff against a defendant as connected with a cause of action defendant should have the right to call on plaintiff to prove the charge or else have it expunged from the judgment roll.

Our conclusion is that the court erred in striking out the answer as sham and frivolous and in directing judgment to be entered for the amount demanded in the complaint.

The order is reversed.