## COHEN v. SWIFT & CO.*
### No. 6209.

Circuit Court of Appeals, Seventh Circuit.
Feb. 18, 1938.

Greenberry Simmons, of Louisville, Ky., and M. K. Hobbs, of Chicago, Ill., for appellant.

Henry Veeder, Albert Veeder, and Edgar B. Kixmiller, all of Chicago, Ill., for appellee.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Helen Carloss, Sp. Assts. to Atty. Gen., for intervener the United States.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decree of the District Court dismissing appellant's bill of complaint and denying application for a preliminary injunction. The action is for the return of moneys paid as processing taxes to the appellee by the appellant and others similarly situated.

It is alleged that the appellee added the processing tax which was a substantial part of the purchase price of hog meat and pork products and that appellant, and others similarly situated, paid such tax by reason of the Agricultural Adjustment Act, as amended, 7 U.S.C.A. § 601 et seq.; that a portion of the sum sought to be recovered was paid to the Government, for which sum appellee has pending a petition for refund; and that a certain other portion of the funds sought to be recovered was impounded and returned to appellee after the Agricultural Adjustment Act was declared unconstitutional by the Supreme Court. There is no claim that the processing tax was billed to appellant as a separate item, but it is claimed it was included and made a part of the price paid by appellant for the products purchased, and in order to sustain such claim it is alleged that wholesale prices increased when the processing tax was imposed and decreased when such tax was removed and that the agents and representatives of appellee told appellant and their vendees and customers that the processing tax was included in the purchase price. The bill contains no allegation as to whether such tax included in the price at which it sold the products in question to its vendees; neither is any agreement, express or implied, alleged, whereby appellee agreed to pay to appellant and those like situated the

*Writ of certiorari denied 58 S.Ct. 943, 82 L.Ed. ——.

tax so imposed. It is alleged that after such tax was received by the appellee there was enacted title 3, of the Revenue Act of 1936, §§ 501–506, 26 U.S.C.A. §§ 345–345e, generally referred to as the "Windfall Tax," and that such enactment is unconstitutional and void. An injunction was therefore sought to restrain appellee from paying the tax as provided by said act. Appellee does not contest appellant's contention that the "Windfall Tax" is unconstitutional. The Government, however, was given leave to intervene and by brief and argument has sought to maintain its validity.

While divers issues are raised and discussed in the briefs submitted, we think the answer to the following query is decisive: "When a processor of agricultural commodities is obliged by the Agricultural Adjustment Act to pay to the United States Government a processing tax imposed upon the processing of hogs at a rate of a certain amount per hundredweight of live hog, and which tax is imposed, due and payable at the time the hog is processed and before any purchase or agreement of purchase takes place, as between the processor and the purchaser of pork products, does any legal obligation exist requiring the processor to pay over to the purchaser of pork products an amount equal to the processing tax in the event the same is not paid the Government because the law is held unconstitutional, in the absence of any agreement between the processor and such purchaser so to do?"

In Johnson v. Igleheart Brothers, Incorporated, 7 Cir., 95 F.2d 4, decided February 11, 1938, this court had occasion to consider a question similar in some respects, but the conclusion there reached is not decisive here.

Of the cases cited and discussed, we think that of Heckman & Co., Inc., v. I. S. Dawes & Co., Inc., 56 App.D.C. 213, 12 F.2d 154, is the most strikingly in point. There, as here, plaintiff was seeking a recovery of money alleged to have been paid under a mistake of law. The defendant was a manufacturer of cider upon whom a tax was imposed by the Government. As here, the amount of said tax was added to and included in the price paid by the plaintiff. The law by which the tax was imposed was held to be an illegal exaction. As in the instant case, it was claimed that plaintiff was compelled to pay said tax or else forego dealing in the product which was a large and profitable portion of its business. The opinion

in that case, as we view it, is such a complete answer to the contentions here made that we quote at length, page 155 of 12 F. 2d:

"The Revenue Act of 1918, as construed by the Treasury Department, imposed a tax on the manufacturer, not the dealer. The defendant, as such manufacturer, paid this tax. In selling to the plaintiff, it added to the selling price the amount of the tax, which plaintiff voluntarily paid in order to continue 'dealing in cider, which was a large and profitable portion of its business.' Defendant paid no tax for the plaintiff but for itself. The sale to the plaintiff was not induced by misrepresentation as to law or fact, nor was it the result of undue influence on the one side and undue confidence on the other. The payment of this 10 per cent. by the plaintiff, therefore, was the result of nothing more than a mistake of law, and such a situation presents no ground for equitable relief. Jordan v. Stevens, 51 Me. 78, 81 Am.Dec. 556; Grant v. Giuffrida, 50 App.D.C. 28, 267 F. 330.

"It is equally clear from what we have said that the defendant would be in no better position in an action at law, for 'the rule is firmly established that taxes voluntarily paid cannot be recovered back, and payments with knowledge and without compulsion are voluntary.' Chesebrough v. United States, 192 U.S. 253, 259, 24 S.Ct. 262, 264 (48 L.Ed. 432); Detroit Edison Co. v. Wyatt Co. (C.C.A.) 293 F. 489. See, also, Erkens v. Nicolin, 39 Minn. 461, 40 N.W. 567; Lamborn v. Dickinson County Com'rs, 97 U.S. 181, 24 L.Ed. 926. In Kastner v. Duffy-Mott Co., 125 Misc. 886, 213 N.Y.S. 128, the facts were identical with those here, and the court said:

" 'Plaintiffs seek in this action to recover from the defendant the amount of the 10 per cent. tax which was included in the price they paid. The tax, however, under the law, was in no event payable by plaintiffs, but only by the manufacturer; that is, the defendant. There was no tax, or claim of tax, against the plaintiffs. The plaintiffs did not pay the money under duress. There was no governmental claim made against the plaintiffs, and the cases cited by the latter, holding the right to recover for a tax paid under the belief that it was valid when in fact it was void, are not in point. The payment was not made under a mistake of fact. Both parties knew of the enactment of the law. The defendant made the

purchase price of the cider greater because of its belief that it had to pay the tax to the government; but, nevertheless, the plaintiffs merely paid the price which the defendant demanded for its goods. Plaintiffs make no claim of any agreement that the defendant was to repay the 10 per cent. in the event that the cider should be held not to be taxable. Under such circumstances, the plaintiffs may not recover.'"

The reasoning of this case finds added support in the fact that it was approvingly referred to by the Supreme Court in Lash's Products Company v. U. S., 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251, where a similar situation was presented. Said the court, 278 U.S. 175, on page 176, 49 S.Ct. 100:

"The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. Heckman & Co. v. I. S. Dawes & Son Co., 56 App.D.C. 213, 12 F.2d 154. The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all. * * *

"The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price."

The facts in the Heckman Case are more favorable to appellant's theory than those in the instant case, for the reason that there the tax was based on the sales price of the product, while here the tax has no relation to the article sold because it is imposed and is payable irrespective of whether there is a sale of the product. Section 9, of the Agricultural Adjustment Act, as amended, 7 U.S.C.A. § 609, provided in part as follows: "The processing tax shall be levied, assessed, and collected upon the first domestic processing of the commodity, whether of domestic production or imported, and shall be paid by the processor."

So far as we are able to determine, the law as announced in the Heckman Case has been regarded as controlling. Kastner v. Duffy-Mott Co., 125 Misc. 886, 213 N.Y.S. 128; O'Connor-Bills, Inc., v. Washburn Crosby Co., D.C., 20 F.Supp. 460; Casey Jones, Inc., v. Texas Textile Mills, Inc., 5 Cir., 87 F.2d 454; Texas Co. v. Harold, 228 Ala. 350, 153 So. 442, 92 A.L.R. 523; Shearer v. Commissioner, 2 Cir., 48 F.2d 552.

It is the contention of appellant, however, that the law as thus announced is not determinative of its right to recover for the reason that facts are pleaded showing the coercive nature and purpose of the Agricultural Adjustment Act in addition to its unconstitutionality and that the money thus was obtained by reason of coercion and duress. The cases of United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; Thompson et al. v. Deal et al., 67 App.D.C. 327, 92 F.2d 478; and Union Pacific R. R. Co. v. Public Service Comm. of Missouri, 248 U.S. 67, 39 S.Ct. 24, 63 L.Ed. 131 are relied upon as supporting this theory. What was said by the court in the Butler Case, 297 U.S. 1, at page 70, 56 S.Ct. 312, 321, 80 L.Ed. 477, 102 A.L.R. 914, concerning the coercive feature of the act had reference solely to the farmers. There the Government asserted that the act provided for them a voluntary plan of cooperation. The court, in answer to this contention, points out the effect of a failure or refusal to comply as financial ruin. In other words, what the court there said was to the effect that the advantage accruing to the farmer who complied, was such, that the one who refused or failed to comply could no longer engage in competition. To that extent, the law was coercive. Appellant stresses these words "this progression only serves more fully to expose the coercive purpose of the so-called tax imposed by the present act." But this language is directed not at the tax but the purpose which is sought to be accomplished. To say that the law was coercive as to the farmer who refused to comply is far afield from the claim that it was coercive in its provisions as to appellant. In fact, we see no logical connection between the two propositions. If the Butler Case is authority for the claim that appellant was coerced into paying the tax in question, then, of course, every individual or concern who purchased or handled the processed article from the processor to the ultimate consumer was likewise coerced.

Appellant's position must be based on the theory, erroneous we think, that appellee was the one who imposed the duress. This frank statement is found in his brief: "It therefore shows that if the penalties paid by the appellant and others similarly situated, were made under duress and that such duress flowed from the one from whom recovery is sought, such penalties can be recovered." From this insecure premise, it is argued that appellee was the agency created under the Agricultural Adjustment Act for

the collection of the tax thereby imposed. We do not so conclude. By the express provision of the act, appellee was specifically charged with the duty of paying the tax, a vastly different obligation from being charged with the duty of acting as the agent for the Government in the collection of the tax from its vendee. In fact, appellee was no more responsible for, and had no more control over the alleged compulsion and coercive features of the law than did appellant. Appellant also places much stress upon the recent case of Thompson et al. v. Deal et al., supra, an examination of which fails to sustain his contention either in whole or in part. The question there presented was whether the purchasers of certain certificates who had paid their money into a pool were entitled to recover after the Cotton Control Act, 48 Stat. 598, 7 U.S.C.A. § 701 et seq., by which such pool was created, had been held unconstitutional. The court decided that inasmuch as the certificates were of no value, the purchasers were entitled to a return of their money. Also, the parties defendants in that case were the manager of the National Cotton Pool, the Secretary of Agriculture, the Treasurer of the United States, and the Comptroller and Administrator, respectively, of the A. A. A. They were the agents of, and the pool a part of the mechanism, provided by the law under which the so-called coercion was imposed.

In the light of this opinion, it is not difficult to understand why appellant finds it necessary to rely upon the proposition that the coercion or duress contended for was imposed by the one from whom he now seeks recovery. Another significant thing in connection with the Thompson Case is that it is an opinion by the same court which rendered the opinion in Heckman & Co., Inc., v. I. S. Dawes & Son Co., Inc., supra. In fact, three of the same Judges sat in each case. Nowhere in the Thompson opinion is the Heckman Case referred to and it seems entirely logical to conclude that the court, in its latest opinion, did not consider that it was dealing with an analogous situation.

The case of Union Pacific R. R. Co. v. Public Service Comm. of Missouri, supra, is distinguishable in the same manner. There it was held that the money of the plaintiff was obtained by duress and coercion and a recovery was permitted; but it was against the agency of the state which was responsible for such coercion and duress.

So we get back to the case of Heckman & Company v. Dawes & Son Company, supra, as announcing the law controlling in this case. Appellant, in an attempt to distinguish that case from the instant situation, calls our attention to this language in that opinion: "The plaintiffs did not pay the money under duress." That statement makes the opinion all the stronger against appellant's position here. The court there also stated, "[plaintiff] was forced to pay said tax or else to forego dealing in cider which was a large and profitable portion of its business," which shows that the court was dealing with the same contention as is here made and decided such question adversely to plaintiff. If the tax imposed by law upon the manufacturer at the time of the sale of his products, and included in the price thereof to the vendee, was not collected from the latter under duress, how can it be claimed that in the instant case a tax imposed upon the processor and included in the cost of his product to the vendee was obtained by duress? There, as here, it was contended that the money refunded to the defendant after the law by which it was collected was held to be illegal, constituted a trust fund for the benefit of the vendee. The court there held, as we must hold here, contrary to such contention. It is said here, the payments were not voluntarily paid by appellant, and in reply it can be just as accurately said that they were not voluntarily made in the Heckman Case.

It is our conclusion that appellant has failed to state a cause of action which entitles it to recover either in whole or in part. Having thus concluded, there is no occasion for us to consider other questions raised on this appeal, including the constitutionality of title 3 of the Revenue Act of 1936, §§ 501–506, 26 U.S.C.A. §§ 345–345e, and matters incident thereto.

The decree of dismissal is affirmed.