(87 South. 439)

**GOLSON v. W. F. COVINGTON MFG. CO.**
(3 Div. 432.)

(Supreme Court of Alabama. Dec. 16, 1920. Rehearing Denied Jan. 20, 1921.)

1. Electricity ⬅16(7)—Failure to guard high-tension wire held not proximate cause of death.

Where a high-tension electric wire was maintained by an independent contractor on the premises of a manufacturing company to supply power to it, the manufacturing company is not liable for the death of boy who came in contact with bare wire thrown over the power wire by some unknown person, on the theory that it negligently failed to guard the wire, since such failure was not the proximate cause of death.

2. Negligence ⬅136(15)—Status of child as trespasser or invitee held jury question.

— Where premises of manufacturing company were uninclosed, and evidence showed that stock was accustomed to graze thereon, and children went there to play and to get the stock, it was a question for the jury whether a child, who went onto the premises to get a cow, was a trespasser, an invitee, or a licensee.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] 204 Ala. 364.

**3. Negligence ⬤33(1)—Care as to trespasser defined.**

To a trespasser the proprietor of premises owes only the duty not to injure willfully or wantonly, or to warn trespasser of danger known by proprietor to exist on the premises after he has knowledge of trespasser's presence.

**4. Negligence ⬤136(15)—Status of person as trespasser or invitee a jury question.**

A mere passive acquiescence in long-continued use of premises by others does not necessarily, as a matter of law, determine whether the enterer is a trespasser, invitee, or licensee, but that question in ordinary cases is within the province of jury.

**5. Negligence ⬤33(3)—Child may be trespasser.**

A child may be trespasser at least to the extent of determining whether the proprietor was under any duty to guard against his injury.

**6. Master and servant ⬤322—Owner must guard against dangerous agencies.**

The fact that an inherently dangerous agency or instrumentality was installed on the proprietor's private premises by an independent contractor does not relieve proprietor from duty to exercise reasonable care, including inspection, for the safety of third persons, especially children, who go upon the premises thus made dangerous by invitation or license of the proprietor.

**7. Negligence ⬤121(2)—Injury by dangerous agencies does not establish negligence.**

The mere fact that a child was killed by coming in contact with a dangerous agency on the premises of another does not establish liability of proprietor, since he is not to be held liable unless time and opportunity were available within which he might discover and guard against the danger.

**8. Electricity ⬤19(3)—Plaintiff must prove defendant's negligence.**

In action against manufacturing company for electrocution of plaintiff's child on its premises, the burden is on the plaintiff to prove that the dangerous condition which resulted in child's death, and which was caused by some unknown person, had existed long enough for proprietor to have notice of it.

**9. Negligence ⬤134(10)—Jury cannot guess cause of injury.**

Where the testimony leaves the material matter leading to liability uncertain as to causes for which defendant might be responsible and causes for which he is not responsible, the jury cannot be allowed to question that negligence was real cause of injury.

**10. Electricity ⬤19(5)—Evidence held insufficient to warrant inference of negligence by defendant.**

In an action for the death of boy, who came in contact with a bare wire which had been thrown by some unknown person over a high-tension wire, evidence that there were dead frogs and chickens at that point, which had already begun to decay, held insufficient to show that the condition had existed long enough for the proprietor of premises to have learned of it in the exercise of ordinary care.

Appeal from Circuit Court, Montgomery County; William L. Martin, Judge.

Action by Chloe Golson against the W. F. Covington Manufacturing Company and another for damages for death of plaintiff's minor child. Judgment for the named defendant, after the action was dismissed as against the other defendant, and plaintiff appeals. Affirmed.

Count H, as referred to in the opinion, is as follows:

The plaintiff, who is the mother of Prince E. Pickett, deceased, a minor of the age of five years, the father of said Pickett being dead, claims of the defendant $10,000 as damages, for this: That on, to wit, the 18th day of May, 1919, the defendant was the occupier or certain premises, on which was located his plant, in Montgomery county, Alabama, and was then and there engaged in a manufacturing business using electric power; that there was located on defendant's said premises, in the supplying of said power, a certain electrical apparatus, through which apparatus there was conducted an electric current dangerous to human beings coming into contact therewith.

Plaintiff avers that said apparatus was on the date aforesaid a dangerous instrumentality, in this: That it carried a deadly current of sufficient power to kill a person coming into contact with it; that attached to apparatus, and extending from apparatus to or near the ground, there was an uninsulated wire, which has remained there for a long period of time to wit, three days; that by said wire the said deadly current was carried to a point where passers-by were likely to come into contact with it; that children were accustomed to go upon said premises of defendant, which defendant knew, or was in possession of facts which would have led a reasonable man to believe.

Plaintiff avers that, at the time aforesaid, said Prince E. Pickett, who along with other children was so accustomed to go upon said premises of defendant, went upon said premises, came into contact with said deadly current carried by said uninsulated wire, and as a proximate consequence thereof was killed.

The plaintiff avers that the defendant negligently suffered or permitted said uninsulated wire to remain in the position above described, and that as a proximate consequence of said negligence her said son was killed.

Tilley & Elmore, of Montgomery, for appellant.

The court erred in giving the affirmative charge for the defendant and in refusing plaintiff's application for a new trial. 190 Ala. 191, 67 South. 407, Ann. Cas. 1917A, 721; 161 Ala. 162, 49 South. 772; 17 Wall. 596, 21 L. Ed. 737; 131 Ala. 590, 31 South. 561; 96 Ala. 198, 11 South. 339; 29 Cyc. 457; 94 Ala. 636, 10 South. 280; 192 Ala. 503, 68

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

South. 358; 163 Ala. 339, 50 South. 335, 24 L. R. A. (N. S.) 369, 136 Am. St. Rep. 74, 19 Ann. Cas. 937; 84 Ala. 188, 4 South. 158; 149 Mass. 340, 21 N. E. 482, 4 L. R. A. 213, 14 Am. St. Rep. 427; 14 Ala. App. 139, 68 South. 572; 147 Iowa, 238, 124 N. W. 320, 28 L. R. A. (N. S.) 564; 146 Ala. 327, 39 South. 757; 197 Ala. 607, 73 South. 45; 165 Ala. 560, 51 South. 746, 138 Am. St. Rep. 77; 171 Ala. 330, 54 South. 638, Ann. Cas. 1913A, 1181; 177 Ala. 427, 59 South. 63; 14 R. C. L. 85, 91; 61 Ohio St. 215, 55 N. E. 618, 76 Am. St. Rep. 376; 2 Black, 418, 17 L. Ed. 303; 2 Q. B. 392. The exhibits properly appear in the bill of exceptions. 96 Ala. 14, 11 South. 402; 188 Ala. 539, 66 South. 454.

Weil, Stakely & Vardaman, of Montgomery, for appellee.

Under the facts in this case the trial court properly directed a verdict for the appellee. 165 Ala. 555, 51 South. 746, 138 Am. St. Rep. 77; 143 Ala. 248, 39 South. 142; 146 Ala. 316, 39 South. 757; 161 Ala. 153, 49 South. 772; 29 Cyc. 529; 20 R. C. L. 84. The court cannot consider the exhibits. 146 Ala. 349, 39 South. 449; 78 South. 383.

McCLELLAN, J. The five year old son of the appellant (plaintiff) was killed by electricity. This action for his death was brought against the appellee and the Montgomery Light & Traction Company's receiver. The Light Company settled, and as to it the suit was dismissed. The court gave the general affirmative charge for the remaining defendant, appellee. The one question presented for review is the propriety of this action of the court, which, of course, depends upon the inquiries of law and fact raised by the issues resulting from traversed allegations of the complaint. The demurrer to the first count of the complaint being, confessedly, well taken, the complaint finally consisted of counts A to H, inclusive. All of these counts, except that lettered H, declared upon the defendant's breach of duty in negligently failing to so guard a certain electrical apparatus carrying a dangerous current of electricity as to prevent or avoid injury to children, who were accustomed to come on the premises, of which practice appellee had notice or knowledge. Count H, to which demurrer was overruled, will be reproduced in the report of the appeal.

The defendant was a customer of the Light Company. The Light Company agreed to furnish the defendant with electric power to drive its manufacturing plant. According to this contract, the Light Company was to deliver the current at defendant's plant and to furnish and maintain all apparatus and appliances for the purpose. A transformer was installed by the Light Company to step 'down the current for the defendant's use. The Light Company was an independent contractor in both the furnishing of electric power and in the installation of the apparatus. This transformer was surrounded, insufficiently, phases of the evidence tended to show, by a latticed inclosure. In some way, not accounted for in the evidence, two strands of "hay wire" were "hooked" over the Light Company's high-tension wires entering the transformer; and this foreign wire was passed through the lattice of the inclosure a foot or two outside of the inclosure, where it came in contact with other hay wire lying on the ground. The hooking of this foreign wire over the insulated high-tension wire immediately burned away the insulation at the point of contact and charged the hay wire with the current carried by the high-tension wires. The current passing over the high-tension wires into the transformer was of a voltage above 2,000, a deadly current, against which, one witness testified, only special precaution, not afforded by insulation alone, would protect from death a person touching it. There was evidence authorizing the jury to find to the effects: That this apparatus, including the high-tension wires, was a dangerous instrumentality; that children, either in play or for other purposes, customarily went on that part of defendant's uninclosed premises (on that side of defendant's building) on which the apparatus was set up by the Light Company under its contract with defendant; that defendant either knew the fact of the customary presence of children on the premises, or that the use was so general and long indulged that knowledge or notice thereof on the part of the defendant might be inferred by the jury, notwithstanding the denial shown by the evidence for defendant.

[1] The plaintiff sent her child, on Sunday, the day he was killed, to look for her cow. The child went on the premises of the defendant, and, at a point a foot or two outside of the insufficiently (to state that feature of the controverted issue with favor to appellant) latticed inclosure around the transformer, came into contact with the current passing through the thus charged foreign wire, the deadly current being alone communicated to the child either through its knee or its feet. There is no evidence whatever that the child touched the transformer or the high-tension wires with its hands, or that the child hooked the hay wire over the high-tension wires, or that it was attracted to the place by the apparatus. Referring to the particular negligence charged in counts A to G, inclusive (i. e., negligent failure to guard or inclose the transformer, a dangerous apparatus under the special circumstances averred and shown by phases of the evidence), error in giving the general charge for the defendant cannot be predicated of the idea that the proximate cause of this child's death was the negligence alleged in counts

A to G, inclusive. The independent, responsible agency afforded by the hooking of the foreign wire over the high-tension wire was the efficient, intervening legal cause that electrocuted the child. L. & N. v. Quick, 125 Ala. 553, 561, 28 South. 14; A. G. S. v. Vail, 155 Ala. 382, 387, 388, 46 South. 587.

Count H (reproduced in the report of the appeal) proceeds, under construction, upon a different theory. We repeat that no question of the sufficiency of this count, as upon demurrer, is presented. The negligence alleged in count H is not that of the failure to inclose or guard the transformer. Its averments (perhaps too indefinite, equivocal, or inferential in respect of the allegation of facts giving rise to obligation and to duty, if assailed by appropriate demurrer) refer the dereliction alleged to special circumstances, viz.: (a) The presence on defendant's premises of an instrumentality into or through which passed a current of electricity of a dangerous character; (b) the customary presence of children on these premises, a fact known to defendant or who was in possession of information reasonably calculated to inform defendant of such customary use of the premises; (c) and permitting the uninsulated foreign wire to remain (for, to wit, three days) in such position as to conduct a deadly electrical current to a place where contact therewith by persons on the premises was likely to occur, to which probable happening the death of this child was traceable. There is no evidence whatever invoking the doctrine of an "attractive nuisance." There is no evidence or inference therefrom that this child was "attracted" to the premises by the apparatus in question. Under the evidence, the presence of this child upon these premises, on Sunday when the plant was not operating, must be attributed alone to the mission on which the plaintiff sent the child, viz. to find the plaintiff's cow—there being phases of the evidence tending to show that cows and horses "browsed around the plant" (premises about which, up to the transformer, there was no inclosure); that for "three years" children had been seen "on the vacant lot, going for cobs, meal, cows and playing."

[2-5] Under the facts and circumstances shown by the evidence, whether this child was a trespasser, or an invitee, or a licensee was an inquiry the jury alone could properly solve; an inquiry upon which depended the presence or absence of a duty, and its measure and quality, from this defendant to this child. To a trespasser a proprietor of premises only owes the duty not to willfully or wantonly injure him, or to exercise reasonable diligence to warn him of dangers known by the proprietor to exist on his premises after he has knowledge of the presence of the trespasser on the premises. A mere passive acquiescence in a certain, though long-continued, use of premises by others, will not necessarily, as a matter of law, characterize the enterer a trespasser, an invitee, or a licensee; the solution of such inquiries, in ordinary cases, being within the province of the jury. A. G. S. v. Godfrey, 156 Ala. 202, 218, 219, 47 South. 185, 130 Am. St. Rep. 76. In this jurisdiction a child may be a trespasser, at least to the extent of controlling the determination of the existence vel non of duty on the part of a proprietor. Jefferson v. B. R. & E. Co., 116 Ala. 294, 300, 22 South. 546, 38 L. R. A. 458, 67 Am. St. Rep. 116. If the child was a trespasser on this occasion, there could have been no liability; the presence of the child on the premises not being actually known to the defendant, or to any one authorized to impose upon the defendant the consequences of such knowledge.

[6] The fact that an inherently dangerous agency or instrumentality is installed on a proprietor's private premises by an independent contractor does not absolve the proprietor from the duty to exercise reasonable care and diligence to conserve the safety of third persons, especially children, who go upon the premises, thus made perilous, by the invitation or license of the proprietor. Thompson v. Alex. City Cot. Mills Co., 190 Ala. 184, 191, 67 South. 407, Ann. Cas. 1917A, 721. Though the proprietor is not responsible for the negligent acts or omissions of his independent contractor, the inherently dangerous character of the instrumentality installed by the independent contractor on private premises creates the proprietor's duty to take reasonable care that his invitees or licensees will not suffer injury from such agency, and this duty is emphasized where notice or knowledge of the customary presence of children about such danger is possessed by the proprietor. Thompson's Case, supra. An element of this duty is the exaction that a proprietor shall exercise reasonable care and diligence to inspect his premises, with a view to becoming sufficiently advised to meet this duty's demand toward those who it is reasonable to expect will enter the premises.

[7] But in the present instance the evidence shows indisputably that the proximate cause of this child's death was not the instrumentality, the transformer, however dangerous it was. That cause was afforded by the intervention of the independent, responsible agency that placed the foreign wire on the high-tension wire, and trailed its current-transmitting line to a point outside the latticed inclosure of the transformer. Hence the only possible lead to this proprietor's liability that the law could recognize must be found in the negligent breach of duty on the part of this proprietor to discover, and to guard, or to remove, the condition thus created by the presence of the foreign wire. Now this duty on the part of a proprietor may exist, and still the propri-

ctor not be held responsible for injurious consequences, unless time and opportunity were available within which the proprietor might discharge his duty to discover and to guard or remove the condition creating the hazard to invitees. The mere fact of injury on the private premises of another will not alone impute negligence to the proprietor. 20 R. C. L. §§ 51 and 52.

[8] The burden of proof was, of course, on the plaintiff to make out a prima facie case of negligence under her count H. There was no evidence that this defendant, or any one else for whose acts or omissions he was accountable, placed this foreign wire in contact with the high-tension wires, or that they knew or had any notice of its presence. When it was placed there was left entirely unindicated in the evidence—whether an hour, a week, or any other period before the tragedy occurred—unless the evidence to be quoted furnished some measure of proof of the period during which this condition existed.

The witness Scott testified:

"Two dead frogs there, near the boy's body, had been dead long enough, it seems, for flies to be after them. A chicken lying there, with its leg burned or cut off, had been dead long enough to have maggots in it. There was a large wad of hay wire there, wadded and tangled together. When the witness arrived, the wire had been taken off the boy."

The witness Davis testified:

"A dead chicken there, full of maggots and almost rotten, had one of its legs burned off, and two frogs were burned so badly that one could hardly tell what they were. * * * When the witness arrived, * * * a soldier had taken the wire from the boy with a broom."

The witness Underwood testified:

"When witness arrived, the boy was struggling on the ground. Witness shoved the wire from under him with a stick. * * * Witness saw some dead frogs and a chicken lying near the boy's body."

These quotations constitute all the evidence that could, by any possible construction, bear upon the duration of the period the condition in question existed before the death of the plaintiff's child.

[9] In American Cast Iron Pipe Co. v. Landrum, 183 Ala. 132, 135–136, 62 South. 757, and Carlisle v. Central of Georgia Railway Co., 183 Ala. 195, 198, 62 South. 759, it was held that where the testimony leaves a material matter leading to liability so uncertain as between causes for which the defendant might be responsible and causes for which the defendant could not be held accountable—

"it is not for the jury to guess * * * that the negligence of the defendant was the real cause when there is no sufficient foundation in the testimony for that conclusion."

[10] The doctrine of these cases is due application to the very material matter we have indicated. Whether the dangerous condition in question, viz. the presence of the foreign wire, as stated, existed sufficiently long to have enabled the defendant, with reasonable diligence, to have discovered it, and removed or guarded it, is left in too much uncertainty to warrant any possible conclusion upon which to rest the liability of this defendant. The quoted evidence does not show, with any degree of uncertainty, that the animal life decomposing about where the boy was killed was rendered so by contact with this foreign wire. That may have been the cause of the death of the chicken and the frogs, but this mere possibility was not sufficient to show a discharge by the plaintiff of the burden of proof resting upon her. Furthermore, the evidence did not enlighten the court or the jury as to the period of time requisite in this climate, in the month of May, to set up the decomposition of this animal life that the evidence discloses. Having failed to efficiently discharge the burden of proof with respect to this material matter, it cannot be affirmed here that the trial court was in error in giving the general affirmative charge at the request of the defendant.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS. JJ., concur.