6 So.2d 599

**MUTUAL BEN. HEALTH & ACCIDENT ASS'N v. BAIN.**

**6 Div. 987.**

Supreme Court of Alabama.

Feb. 19, 1942.

Rehearing Denied March 19, 1942.

Smith, Jackson & Rives, of Birmingham, for appellant.

472

Bumgardner, Saunders & Hawkins, of Bessemer, for appellee.

FOSTER, Justice.

This is an action on an accident policy of insurance whereby defendant agreed to pay plaintiff the stipulated monthly sum of $75 if he should through accidental means sustain bodily injuries, "which shall wholly and continuously disable insured for one day or more, and so long as the insured lives and suffers said total loss of time," and the sum of $30 monthly "if such injuries * * * shall wholly and continuously disable the insured from performing one or more important duties."

Plaintiff is here suing for the $75 monthly, claiming that he suffered such an injury which caused him to be wholly and continuously disabled to the present time. Defendant claimed on the trial that plaintiff did not sustain a total disability which has so continued, but that it continued to be total only for a time, and that thereafter the disability was only partial for which plaintiff has been paid at the rate of $75 for the period of total disability, and has declined defendant's offer to pay $30 monthly for the period of partial disability.

So that the substantial issue of fact was whether plaintiff's total disability has continued throughout all the period for which claim is made, or whether during a portion of it the disability was only partial, as both total and partial disability are described in the policy.

Plaintiff gave the following account of the occurrence: "I was working for the Black Diamond Coal Mining Company. I have been working for them around ten years or probably a little better. I have not worked in any other coal mine than that one. I was working for them on December 7, 1939. Besides being a coal miner I have no other trade. * * * I went to work that night about eleven o'clock, and I would get off right at seven the next morning. This night when I was hurt I was cleaning out a hole down there, a muck place to build a dam, concrete dam there. Digging out a big place in the mine for installing a concrete dam. * * * The loose timber started to fall right over in the hole where some boys had been in the hole. It started to fall and I caught it. I caught it with my left arm. I closed my right arm around a timber that was sitting pretty close, and held it to keep. it from falling in with it to brace me, to keep me up. A great pain happened in my arm in there. The pain seemed to be from my neck plumb down to the end of my hand. I held the timber. The boys in the hole jumped up and grabbed it and helped me to lay it down. After I set this timber down I did not do any more work that night. I walked up to a room. I got sick and laid down for a little while to see if it would wear off. It did not wear off; not fast. I went home that morning when the

shift was over. The condition of my arm with reference to paining me when I went home was just like you rub your elbow on something, a funny pain, you call it tingling only about ten times worser; I couldn't hardly stand it. Yes, sir, I went to see a doctor that day. I went to see Dr. Lilly. He put something on it, alcohol or something, and shaved it and bandaged it up. Yes, sir, that night I went back to the job. No, sir, I did not do any work. I disremember how many days I stayed down there. No, sir, I did not stay on it until I went to the hospital; not exactly on that job. Yes, sir, I stayed on the job with the Black Diamond and worked. No, sir, I did not do any work with either arm from the time I got hurt until I went to the hospital. No, sir, I have not done any work since that injury, that required use of either one of my arms."

There was testimony as to the nature and effect of the injury from which the jury could find that the loss to plaintiff was not only in the use of his left arm in doing manual work, to which he was accustomed, but that such work otherwise affected him so as to disable him wholly from so doing. There were conflicting tendencies of the evidence in this respect.

The court in charging the jury on the subject and defining total disability used the following language to which exception was reserved:

"Our law as applied to that is, That the term totally and permanently disabled from engaging in any occupation is not to be construed as requiring a state of complete helplessness, but means no more than the inability to perform the material acts of the insured's business or occupation in substantially his customary and usual manner."

This charge was evidently taken from the case of John Hancock Mutual Life Ins. Co. v. Schroder, 235 Ala. 655, 180 So. 327, and counsel so declare. It will be noticed that this language does not include any business or occupation except such as that in which insured had been engaged. In that case, the policy provided that the company would consider as permanent total disability the entire and irrevocable loss of the use of both feet. The question in the case was whether there was an entire and irrevocable loss of the use of both feet which had been injured in an airplane accident. It was wholly immaterial on that issue whether the accident wholly disabled him from engaging in his customary business or any other business, except as material to the question of whether his having been so engaged showed an absence of the entire loss of the use of both feet. The statement of the court used in that opinion was not exact as applied to other questions of total disability as defined generally.

In the policy in the instant case the total disability is not confined to his customary business. Neither was it in the Schroder case, supra, but in that case the question was not whether he could engage in some other business, but simply whether the loss of the use of both feet was entire. When a policy does not limit the disability to the business in which insured was engaged, we cannot do so. We have had many cases on the subject. The last one in point is Mutual Life Ins. Co. v. Clyde Danley, 5 So.2d 743,[1] decided December 11, 1941. It gives a complete analysis of our cases on the subject, shows their conflicting tendencies, and reaffirms the true rule in which the entire Court concurred.

Total disability is not properly limited to inability to perform the material acts of the insured's business or occupation in substantially his customary and usual manner, but the charge in the instant case so limits it, as does also the charge in the Schroder case, supra, but the meaning of the policy is that it requires inability to perform the substantial features of any gainful occupation within the range of his mental and educational capacity into which he is able physically to fit by reasonable effort and in a reasonable time, if there is to be a recovery under the total disability clause.

We think the court erred in charging the jury to which exception was reserved as noted above.

But for the benefit of another trial, we may say that the evidence did not seem to require an affirmative charge for defendant, because of that tendency of it which shows that not only the left arm was rendered useless to engage in any form of work which requires its use, but that his blood circulation and the muscular arrangements were so affected by his condition as to interfere seriously with any form of muscular work for which he was adapted.

---

[1] Ante, p. 80.

474

It is also insisted that the demurrer to the complaint should have been sustained. We think the objection is hypercritical. It is principally for that each count alleges that defendant insured "the life of plaintiff George A. Bain against loss of time resulting" as set out in the policy. The objection urged is in using the words "life of plaintiff" against loss of time. But the meaning is clear that it intends to allege that defendant insured plaintiff against loss of time resulting as alleged. And that is exactly what the policy of insurance did.

With respect to the other assignments of error, all we need say is that the questions there presented probably will not arise on another trial, and need not be discussed since the judgment must be reversed for the error in charging the jury, to which exception was reserved and as set out in the sixth assignment.

Reversed and remanded.

GARDNER, C. J., BOULDIN, and LIVINGSTON, JJ., concur.