11 So.2d 462

**METROPOLITAN LIFE INS. CO. v. MAGOUIRK.**

**7 Div. 704.**

Court of Appeals of Alabama.
Oct. 6, 1942.

Rehearing Denied Nov. 3, 1942.

Knox, Liles, Jones & Blackmon, of Anniston, for appellant.

Chas. F. Douglass, of Anniston, for appellee.

6

BRICKEN, Presiding Judge.

Appellant issued to Monsanto Chemical Company a Group Policy of Insurance which specified, among other things, the following:

"(b) Total and Permanent Disability Benefits.

"Upon receipt by the Company of due notice and proof—in writing—that any Employee, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit, the Company shall discontinue the Life Insurance in force on the life of said Employee and six months after the receipt of such proof, shall commence to pay, subject to the Terms hereof, in lieu of the payment of Life Insurance at his death, monthly instalments as defined below to the said Employee or to a person designated by him for the purpose; provided that if such disability is due to, or is accompanied by, mental incapacity, the instalments may be paid to the Beneficiary of record of the said Employee, and the Company shall continue such payments for the period provided below, should said Employee continue totally and permanently disabled."

And in connection therewith issued a certificate to the appellee wherein it was said:

"Total and Permanent Disability Benefits.

"The Group Policy mentioned on page one of this Certificate provides the benefits specified below in case of any Employee who furnishes due proof to the Company, within one year after the termination of his Life Insurance, that, while insured thereunder and prior to his 60th birthday, he has become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for wage or profit."

Appellee, having suffered a serious and permanent injury as the result of a car turning over and catching his left hand, which he has since been unable to use, brought this suit to recover what he conceived to be the matured installment payments due as for a total and permanent disability. The trial resulted in a judgment against the appellant, from which this appeal is prosecuted.

The record contains forty-six assignments of error, among others, ten relating to the pleadings, nine to refused charges, sixteen to rulings on testimony, two overruling the motion for a new trial. The view we take of the case renders unnecessary any elaborate discussion of the various assignments of error. It is sufficient to say in the trial of the case, the lower court's rulings but followed the law as theretofore declared by our Supreme Court as to what constituted total and permanent disability. Subsequent to such trial the Supreme Court has defined total and permanent disability in different language from that embodied in previous decisions which the trial court followed and hence the anomalous result follows that the trial court must be reversed for following a Supreme Court decision because a subsequent decision of that court shows the trial court to have been in error.

■ In Mutual Life Insurance Company of New York v. Danley, 242 Ala. 80, 5 So. 2d 743, 747, decided December 11, 1941, the Supreme Court, after reviewing many previous decisions, announced the following: "The result of our many decisions, therefore, is the true rule that total disability within the meaning of the policies here involved means inability to substantially perform the duties of any substantially gainful occupation for which he is qualified by training, education or experience. The proper test is not whether an insured can do all or substantially all of the things he previously did in following a gainful occupation, but whether or not the insured can substantially perform the material duties of some occupation for which he is qualified."

It had been previously held, "that a man with only an arm or leg, if not otherwise incapacitated, may do much valuable work and engage in many gainful occupations" and that "it is of common knowledge that

a man accustomed to manual labor, if otherwise in sound health, is not totally disabled to engage in many gainful occupations of that class." When the sole permanent disability consists of the loss of the use of one arm any opinion by a medical expert that such injury works a total disability to do profitable manual labor by one accustomed to such labor, should not be received. Equitable Life Assurance Society of United States v. Davis, 231 Ala. 261, 164 So. 86, 88.

And this court held, in Equitable Life Assurance Society v. Davis, 28 Ala.App. 15, 178 So. 236 certiorari denied 235 Ala. 224, 178 So. 237, that a notice of claim of disability on account of the loss of an arm did not show a total and permanent disability.

In a still later case, Mutual Benefit & Accident Association v. Bain, 242 Ala. 471, 473, 6 So.2d 599, 601, the court said: "There was testimony as to the nature and effect of the injury from which the jury could find that the loss to plaintiff was not only in the use of his left arm in doing manual work, to which he was accustomed, but that such work otherwise affected him so as to disable him wholly from so doing. There were conflicting tendencies of the evidence in this respect."

Just what facts were involved in the Bain case, supra, which showed that work otherwise affected the claimant so as to disable him wholly from performing the same, is not shown.

It appears from this transcript that appellee had finished the fifth grade in school and his work was manual labor at various types of jobs, and it sufficiently appears from the testimony of expert witnesses that the injury to his hand is permanent; "I consider that he can do any kind of work that any one-armed man could do." And he could perform, "some work with his hand that a one-armed man could not do. I don't think that would be any risk to his health." Another testified: "I think he could do any labor or carry out any occupation that required the use of one hand. It is my opinion that his disability would not be as great as that of a man that had his arm cut off above the elbow. I think he would have less disability than such a man. He can use his hand to do certain things. It is better than an artificial hand. Better than a man who hasn't got a hand."

The testimony shows that since the injury the appellee had worked, and at the time of the trial was working. He had run a wood yard and at the time of the trial was writing insurance. True, he testified that he became fatigued and was tired at night; that he did not sleep well; that when he turned over on this crippled hand it hurt him and woke him up; that it hurt from time to time during the day and was particularly painful if he undertook to lift or push a heavy object and use this hand at all.

The testimony shows a most unfortunate accident—a painful and permanent injury but, in our judgment, does not measure up to a total permanent disability within the purview of the Danley case, cited, supra.

Entertaining this view, we are driven to the conclusion that the appellant was entitled to the affirmative charge. That conclusion renders unnecessary any discussion of the other assignments of error.

Reversed and remanded.

## On Rehearing.

The application for rehearing filed by appellee in this case is sought to be stricken or dismissed by motion of appellant, as follows:

"Comes appellant and respectfully shows unto the Court, and unto the Judges thereof, as follows:

"1. That this case was regularly submitted in this Court on May 26, 1942, and on said original submission this appellant fully complied with Rule of Practice No. 13 of this Court and of the Supreme Court by filing briefs, with proper certificate, as required by said Rule No. 13. [Rules of Practice of the Supreme Court, rule 13, Code 1940, Tit. 7, Appendix].

"2. That appellee failed to comply with Rule of Practice No. 38 of this Court, and of the Supreme Court and did not file any brief and did not serve any brief upon appellant until June 16, 1942, all of which will appear from the records of this court in this cause.

"The Premises Considered, Appellant Moves the Court to strike, or dismiss, the purported application for rehearing filed in this cause by appellee for the reason that appellee did not comply with Rule 13, as above set out and did not file brief within fifteen days after submission of the case, containing certificate that a copy of same was served within said time upon

8

counsel for appellant, as required by Rule 38 of the Supreme Court of Alabama."

In opposition to the motion to dismiss, or strike, this application for rehearing, able and earnest counsel for appellee makes known to this court appellee's desire to have the opinion of this court reviewed by the Supreme Court. There appears no controversy as to the stated grounds upon which the motion is predicated, but it is shown to the court, in brief of appellee on this question, that counsel for appellee took the precaution to write to the clerk of this court, requesting that the court would grant him a few days further time in which to file brief and in said letters stated what is termed good and sufficient reasons to support the request for extension of time.

Rule 38 provides, among other things: "No appellee can, as matter of right, apply for a rehearing unless brief was filed with the clerk upon the original hearing within fifteen days after submission of the cause containing a certificate that a copy of same was served within said time upon counsel for appellant."

This rule further provides: "An extension of time for filing such brief by any justice upon request of counsel will not suspend this rule so as to entitle the appellee to apply for a rehearing unless a brief was filed within fifteen days as above provided."

However, notwithstanding the emphatic, and apparently mandatory provisions of the rule above quoted, it has been definitely held a discretion rests in the appellate courts in invoking the rule and that the above provisions need not be applied in any case in which the ends of justice may appear to require further consideration. Caraway v. State, 207 Ala. 588, 93 So. 548.

In Hall v. State, 222 Ala. 26, 130 So. 533, 534, the Supreme Court said: "Whether or not the rule should be applied and enforced in the particular case to which the rule applies was a matter addressed to the irrevisable discretion of the Court of Appeals."

The law contemplates that every litigant shall have his day in court, and courts generally act in accordance therewith, and upon the matter under discussion in light of the discretion with which this court is vested, we are constrained to, and do hold, that the motion to dismiss or strike the application for rehearing in this case must be overruled and denied.

As to the opinion promulgated we entertain no doubt of its soundness, therefore the application for rehearing is overruled.

Application overruled.