81 So.2d 297

Joseph L. HOWELL

v.

Georgia Ann ROUECHE pro ami.

6 Div. 780.

Supreme Court of Alabama.

March 10, 1955.

Rehearing Denied May 19, 1955.

Further Rehearing Denied June 23, 1955.

Spain, Gillon & Young, John P. Ansley and S. R. Starnes, Birmingham, for appellant.

Drennen & Drennen, Birmingham, for appellee.

STAKELY, Justice.

This is a suit by Georgia Ann Roueche, a minor four years of age, brought by her mother Ann Roueche as next friend against Joseph L. Howell, the driver of an automobile, claiming damages for personal injuries. It is alleged that the child received personal injuries while on the premises of the Exchange Bank of the City of Birmingham, which was used as a parking lot for patrons of the bank. This parking lot was owned or furnished by the bank for the convenience of its patrons. The complaint consists of one count in simple negligence. There was a verdict and judgment for the plaintiff and hence this appeal.

■ Appellant requested the affirmative charge with hypothesis at the conclusion of the evidence on the theory that appellee had failed to make out a case of negligence. The court refused this charge and since we have reached the conclusion that the charge should have been given, we are setting out the evidence in detail on this phase of the case. The evidence must be reviewed in its aspects most favorable to the plaintiff. Alabama Power Co. v. Buck, 250 Ala. 618, 35 So.2d 355; Texas Co. v. Harold, 228 Ala. 350, 153 So. 442, 92 A.L.R. 523.

There were no eye witnesses to the accident.

Norman Pless, witness for appellee, Vice President of the Exchange Bank of Birmingham, Alabama, testified that the bank building is situated at the corner of 10th Avenue and 20th Street South; that the

bank furnishes a parking lot for its customers located at the rear of the bank; that the bank faces 20th Street and is on the east side of 20th Street; that mothers come to the bank with children and use the parking lot in the rear of the bank; that traffic was in and out of the parking lot constantly; that the parking lot was lined off with parking spaces for automobiles with the most spaces on the right side of the entrance; that the entrance to the parking lot was on the 10th Avenue side which runs east and west beside the bank building; that a person entering the lot from 10th Avenue would turn right off 10th Avenue, cross a sidewalk and enter the parking lot. The witness Pless was asked the following questions and gave the following answers thereto:

"Q. Do you permit children to play in the parking lot? A. Well, we never put up signs to the effect they couldn't play. However, we didn't encourage children to play anywhere where traffic would be involved.

"Q. There is a lot of traffic in there? A. Yes, sir, there is a lot.

"Q. And that place is paved for parking for your patrons? A. That is right.

"Q. If you saw children playing there did you ever run them away? A. Well, we wouldn't as you say, run them away, but we would get them to leave or call their mothers and fathers. We wouldn't run out and get a cop and say 'run them off.'

"Q. But you didn't encourage children to play out there? A. No. sir.

"Q. And it wasn't designed for a playground? A. No."

On redirect examination the witness gave the following answers to the following questions:

"Q. Did children play in that parking lot? A. It wasn't a common thing. I couldn't say they never played there but it wouldn't be a common thing for children to play there.

"Q. Did children frequently use the parking lot going to and from cars? A. Yes. Mothers and fathers bring children to the bank.

"Q. It isn't uncommon to see children in that parking lot? A. No."

On recross examination the witness gave the following answers to the following questions:

"Q. Is it uncommon to see children four and five years of age in there by themselves? A. I would say it would be uncommon to see children four or five years of age alone playing in the parking lot."

Ben McCleskey, witness for the appellee, testified that he was a Police Officer in the City of Birmingham on the day of the accident in question; that he did not see the accident, but talked to Mrs. Roueche, mother of the child, and to the appellant after the accident; that the appellant stated to him that he did not see the child before the child was struck; that the first he knew that he had hit the child was when the man sitting with him on the other side told him he had hit a child and he stopped immediately; that he (witness) saw the appellant's car, the rear end of the car was inside the private parking lot of the bank having crossed the sidewalk; that a car was parked in the space to the left of the entrance and that cars were parked in the first and second spaces on the right; that these cars were parked at an angle; that he (witness) had made measurements of the parking lot; that a six foot concrete wall was located on the east side of the lot and the cars were angle-parked into that wall; that the width between the wall and the bank building is 42½ feet; that the traffic lane in the parking lot is 12 feet six inches wide and the parking spaces were 12 ft. 10 in. long. The witness was then asked the following questions to which he made the following answers:

"Q. Were you familiar with whether it (referring to the parking lot) is frequently or infrequently used? A. It was frequently used.

"Q. Did you frequently see children using the parking lot in company with their parents? A. Yes, sir. There were children brought there in cars by their parents."

Mrs. Ann Roueche, mother of the child, testified that she went to the Exchange Bank on March 3, 1952, to deposit a check and took the child with her; that the child was four years old at that time; that she parked her car in the parking lot in the second space on the right and went into the bank, carrying the child with her; that she deposited a check, left the bank and stopped to talk to a friend outside the bank; that the child was with her at that time; that she entered into a discussion with this friend; that her friend asked her, "Where is your child?" and then she looked behind her and the child wasn't there; that she then went toward her car in the parking lot and upon arrival found the child lying under the right front wheel of the car; that her hair was under it but she wasn't; that the child was then taken to a nearby doctor's office.

Joseph L. Howell, the appellant, testified that he drove an automobile into the parking lot of the Exchange Bank of Birmingham on March 3, 1952; that he was going to make a deposit at the Drive-In-Teller's Window; that he was driving west on 10th avenue and turned off into the parking lot; that cars were parked on each side of the parking lot and one or possibly two cars were in the traffic lane ahead of him going toward the window to make a deposit; that he was driving very slowly, two or three miles an hour at the time he entered the lot; that his speed was slow because he had to drive up an incline to get over the sidewalk following the other cars in; that he was looking ahead in all directions and that he did not see the child at that time; that after he had driven into the parking lot at a "creeping" rate of speed which he estimated at two to three miles an hour, the man seated in the car to his right called to him to stop; that he immediately applied his brakes, got out of the car and there saw the child for the first time under the right front bumper. No part of the wheel was

in contact with her; that we picked the bumper up and pulled her from under there; that there was approximately three feet on either side of his car to the rear of the cars parked in the lot on either side of the driveway down which he was driving. The defendant was then asked the following questions to which he gave the following answers:

"Q. Mr. Howell, you stated earlier, you had driven in that lot before and you are familiar with people going in and out of those parked cars on the right? A. Yes.

"Q. And to refresh your recollection, haven't you seen children there with parents before? A. You ask me to point out some occasion, I could not, but I would assume that is a natural consequence.

"Q. You would assume that you had probably seen children in that area before? A. Yes sir."

■ Of course the driver of a car must be held to know of the lack of discretion and judgment of an infant under seven years of age. And it is his duty to put his car under such control so as to stop immediately if necessary to avert injury to a child. So if a driver coming into the parking lot here involved knew that he was coming into a place where a child under seven years of age was likely to be in his path or in dangerous proximity thereto, it was the imperative duty of such driver to keep his car under such control as would enable him to avoid injuring the child. A driver in such a situation cannot gamble upon being able to stop his car after he suddenly sees a child in such a dangerous situation but the fact that he is driving into a zone where he knows that children are likely to be on the roadway provided for the car or in dangerous proximity thereto, fastens the duty upon him to observe due caution to conserve the safety of such child. Mobile Light & R. Co. v. Nicholas, 232 Ala. 213, 167 So. 298.

"A child of tender years has capacity to exercise only such care and self-restraint as belongs to childhood.

Reasonable men are presumed to know this, and must govern themselves accordingly. The caution and care required of others toward the infant are measured by the age, the maturity, the capacity, and the intelligence of the child." Jones v. Strickland, 201 Ala. 138, 77 So. 562, 565.

See City of Birmingham v. Whitfield, 29 Ala.App. 454, 197 So. 666; Watson v. Ingalls, 218 Ala. 537, 119 So. 667.

■ Drivers or owners of motor vehicles are not insurers against all accidents wherein children are injured. "* * * a driver proceeding along a street or highway in a lawful manner using ordinary and reasonable caution for the safety of others, including children, will not be held liable for striking a child whose presence in the street could not reasonably be foreseen." Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 2A, § 1498, p. 406.

■ The parking lot furnished by the bank in this case for the use of its patrons is in no sense a playground for children. It is not an area where it can be said that children are accustomed to gather and while it is not uncommon for children to come into the area, they come with their parents. We do not consider that under the evidence the area was such as to put the appellant on notice that children were likely to be in the parking lot any more than he would be on notice that children would likely be with their parents in other business areas of the city.

But assuming for the sake of argument that the appellant should have known that children were likely to be in the area what is there to show negligence on the part of this appellant? In order to enter the parking lot it was necessary for him to drive up an incline and across the intervening sidewalk. It was necessary for him to drive in a line between parked cars where there was little space between the parked cars and the driveway he was to follow. He was driving immediately behind one or more cars in order to get to the teller's window to make a deposit. The

undisputed evidence shows that he was looking ahead in all directions and was barely "creeping" along at a speed of about two or three miles an hour. He did not see the child who was four years of age and about three feet in height. When the man riding with him on the front seat in his car to the right yelled to him "stop, a child" or something to that effect, he immediately applied his brakes and stopped the car within a distance of two or three feet. He did not run over the child. The child was struck by the bumper and was found lying under the bumper in front of the right front wheel. From the evidence we are unable to say that the appellant did anything that a reasonably prudent man would not do under the circumstances and we cannot say that he failed to do what a reasonably prudent man should have done under the circumstances. Alabama City, Gadsden & Attalla Ry. Co. v. Bullard, 157 Ala. 618, 47 So. 578.

■■ We must not allow a verdict to stand which is rested on pure speculation and conjecture. Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; Golson v. W. F. Covington Mfg. Co., 205 Ala. 226, 87 So. 439. The burden is upon the plaintiff to establish negligence by affirmative proof and negligence will not be inferred by the mere showing of an accident resulting in personal injuries. Griffin Lumber Co. v. Harper, supra; Carlisle v. Central of Ga. Ry. Co., 183 Ala. 195, 62 So. 759.

Upon a careful consideration of the matter we have concluded, as stated above, that the defendant was entitled to the affirmative charge and because of the refusal of this charge, the court was in error.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.

On Application for Rehearing.

STAKELY, Justice.

■ Our attention has been called to the fact that the appellee's brief on the original

submission was filed sixteen days after submission of the cause. We are asked in accordance with Supreme Court Rule 38, Code 1940, Tit. 7 Appendix, to disregard the application for rehearing filed by the appellee. We have a discretion, however, in applying Rule 38, Metropolitan Life Ins. Co. v. Magouirk, 31 Ala.App. 5, 11 So.2d 462, certiorari denied 243 Ala. 626, 11 So.2d 466, and feel that the ends of justice would be better served if we consider the application for rehearing.

█ We say this because it is claimed by the appellee in brief to support the application for rehearing that we should not have given consideration to the affirmative charge because the certificate of the court reporter does not show that the transcript contains all the evidence. We quite agree that the affirmative charge should not be considered in the absence of a showing that the transcript contains all the evidence. This proposition was not called to our attention on the original hearing. However, we point out that the certificate of the court reporter does not merely state that it is a correct copy "of the proceedings as therein set out" as contended by the appellant. On the other hand the certificate of the court reporter is as follows:

"I, Ray C. Wester, do hereby certify that I reported in shorthand the proceedings in the above styled cause at the time and place stated in the caption hereof, and that I later reduced my shorthand notes to typewriting, or under my supervision, and the foregoing pages beginning with the word 'Proceedings' where the same appears in the center of the page, following the style of the case, the caption and the appearances, contain a full, true and correct transcript of the proceedings as therein set out.

"I further certify that I have on this day notified counsel of the filing of this transcript in the office of the Clerk of the Tenth Judicial Circuit of Alabama."

Since the certificate shows that the transcript contains "a full, true and correct transcript of the proceedings as therein set out", we take it that the transcript does contain all of the evidence.

█ But it is further argued that the transcript on its face shows that it does not contain all the evidence because a rough draft diagram which the attorneys for the appellee drew on the blackboard during the testimony of Police Officer Ben McCleskey, has not been certified to this court. We call attention to the fact that the diagram was not introduced in evidence and was not marked as an exhibit. In commenting on the use of a diagram this court in Crocker v. Lee, 261 Ala. 439, 74 So.2d 429, 435, had this to say:

"The use of a map, drawing, or plat for purposes of illustration must be distinguished from its admission in evidence. In the latter case the instrument possesses within itself evidential characteristics tending to establish a particular fact. In the former case the testimony of the witness is the evidence and the map or diagram is merely an aid to its understanding. * * *"

█ Furthermore the testimony of the witnesses McCleskey and Howell contain such specific statements of fact as to location of streets, buildings and distances in figures that it is readily discernible from the record as to what actually happened. Henley v. Lollar, 35 Ala.App. 182, 44 So.2d 791.

The application for rehearing is overruled.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.