MOORE, Judge.
 

 Geneva Rodgers, acting in her capacity as the mother and legal guardian of Brittany Rodgers, appeals from a summary judgment entered in favor of Rhonda Tur-berville in an automobile-accident case. We reverse.
 

 On June 25, 2004, 11-year-old Brittany Rodgers (“Brittany”) attempted to cross East Troy Street in front of her home in Brundidge to access her family’s mailbox. At that same time, Rhonda Turberville was operating an automobile traveling westbound on East Troy Street. The
 
 *225
 
 right front fender of Turberville’s automobile struck Brittany, causing Brittany personal injuries. Geneva Rodgers (“Rodgers”) filed the underlying civil action against Turberville on June 20, 2006,
 
 [1]
 
 alleging that the accident had resulted from Turberville’s negligence and/or wantonness. On September 14, 2007, Turberville moved for a summary judgment. The trial court granted the summary-judgment motion on July 7, 2008.
 
 [2]
 
 Rodgers timely filed a motion to alter, amend, or vacate the summary judgment, but that motion was denied by operation of law on November 5, 2008. Rodgers then appealed to the Alabama Supreme Court on November 21, 2008. That court, pursuant to § 12-2-7, Ala.Code 1975, transferred the appeal to this court on February 19, 2009.
 

 On appeal, Rodgers argues that the trial court erred in entering a summary judgment as to the negligence claim asserted against Turberville. Our standard of review in cases of this nature is well settled:
 

 “ ‘ “This Court’s review of a summary judgment is de novo.
 
 Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.1986). Once the movant makes a pri-ma facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989); Ala.Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assur. Co. of Fla.,
 
 547 So.2d 870, 871 (Ala.1989).” ’
 

 “Prince v. Poole,
 
 935 So.2d 431, 442 (Ala.2006) (quoting
 
 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004)).”
 

 Gooden v. City of Talladega,
 
 966 So.2d 232, 235 (Ala.2007).
 

 With the foregoing standard of review in mind, we note that, in addition to the facts previously stated, which are undisputed, the parties presented the following evidence to the trial court: Turberville submitted an affidavit in which she attested that she was traveling westbound on East Troy Street within the posted speed limit. According to Turberville, as she was proceeding down a hill, Brittany suddenly ran into the road without looking. Turberville stated that she applied her brakes and began to swerve away from Brittany but that she could not avoid the impact. Tur-
 
 *226
 
 berville also testified in a deposition to those same facts.
 

 Brittany testified that she had looked both ways before crossing the street but that she did not hear or see Turberville’s automobile as it approached.
 

 Sharon King, one of Rodgers’s neighbors, submitted an affidavit, dated January 18, 2007, stating that she had observed the accident. King attested that she
 

 “did not know exactly how fast the [automobile operated by Turberville] was traveling when it hit Brittany, but my estimate from observation and knowledge of that road is that it was traveling just a few miles per hour faster than the speed limit in that area, which is 55 [miles per hour]. I did not see or hear any indication that the woman in the [automobile operated by Turberville] braked, swerved, skidded, or made any visible attempt to avoid Brittany in the road.”
 

 Turberville’s attorney later deposed King. In her deposition, King testified that she did not see the automobile until the moment of impact, which was near the center dividing line of East Troy Street. King stated that, at that moment, it appeared that the automobile was traveling “a little faster than 55” but that she could not state exactly how fast. King admitted that she had no special training on estimating the speed of passing vehicles and that she could not tell the difference between a vehicle traveling 55 miles per hour and one traveling 60 miles per hour. King also testified that she could not tell if an automobile was traveling a few miles above or below the speed limit by looking at the automobile. King agreed that her testimony that the automobile appeared to be exceeding the speed limit had been “a guess” on her part.
 

 King also testified that she did not know whether Turberville had applied her brakes to avoid the accident. King stated that she did not hear any sound to indicate that the automobile went into a skid and that she did not see any skid marks. Tur-berville’s attorney questioned King regarding the effect of an anti-lock braking system (“ABS”), but King testified that she did not know anything about such a system. Turberville did not present any evidence indicating that the automobile she was operating was equipped with an ABS. King was not asked about her affidavit testimony stating that she had not observed Turberville take any other evasive action.
 

 Kilroy Adams also submitted an affidavit dated January 18, 2007. In that affidavit, Adams attested, in pertinent part:
 

 “I was standing about four feet from E. Troy St., facing east while speaking with someone when I saw [the automobile operated by Turberville] come over the hill and strike [Brittany], who was walking across the road.... I did not see or hear any sounds of braking or skidding as the vehicle hit Brittany. I saw the driver of the [automobile] as she passed me and turned the vehicle around near where I was standing. The driver was ... talking on her cell phone as she passed me.”
 

 Turberville’s attorney later deposed Adams. In his deposition, Adams testified as to the speed of the automobile:
 

 “[Adams]: I did not say she was running 55. I said she might have been when she come around there. But it could have been 40. I didn’t specifically say how fast she was driving.
 

 “[Turberville’s Attorney]: Okay. So you’re not offering and are not going to offer any testimony in this lawsuit that my client was exceeding the speed limit when this accident happened?
 

 [Objection by Rodgers’s counsel.]
 

 
 *227
 
 “[Adams]: It was going a little faster than the speed limit.”
 

 Adams later testified that the automobile was traveling “about” 55 miles per hour.
 

 Adams also stated that he did not observe the automobile attempt to avoid Brittany. Again, Turberville’s attorney questioned Adams about the effect of an ABS on the tendency of an automobile to skid. Adams acknowledged his familiarity with an ABS, but he maintained that he had not observed or heard any sounds consistent with Turberville’s attempting to avoid the accident. Adams testified that Brittany was only three or four feet into the road and was attempting to turn back when Turberville’s automobile struck her.
 

 As to Turberville’s use of a cellular telephone, Adams testified that he did not intend to say that he had observed Turber-ville using the telephone at the moment of the collision. He stated that he saw Tur-berville on the telephone as she passed him. He testified that the collision had occurred an unstated distance up the road from his vantage point and that Turber-ville had continued past him before stopping at a driveway and turning around. He saw Turberville using the cellular telephone when she passed him. Adams agreed that it would not be unusual for a driver to pick up a cellular telephone to call emergency 911 following an automobile accident. Turberville did not offer any evidence indicating that she had commenced her use of the cellular telephone only after the accident.
 

 Drivers owe a general duty of care to operate their automobiles in a lawful manner using ordinary and reasonable caution for the safety of minor pedestrians present on the roadway.
 
 See Howell v. Roueche,
 
 263 Ala. 83, 87, 81 So.2d 297, 301 (1955). In moving for a summary judgment, Turberville argued exclusively that Rodgers could not present substantial evidence indicating that Turberville had operated her automobile unlawfully or with a lack of due care. We disagree.
 

 Substantial evidence in the record creates a genuine issue of material fact regarding Turberville’s attentiveness. Adams testified that, immediately after the accident, while Turberville was still proceeding down the road following the collision, he had observed her using a cellular telephone. Although Adams stated that he did not see Turberville talking on that telephone at the exact moment of the collision, a reasonable person could infer from the circumstances that Turberville had been using the telephone at that time. Turberville’s attorney suggested that Tur-berville could have picked up the telephone after the collision, but the record contains no direct evidence to support that theory. On review of a summary judgment, we are required to make all reasonable inferences in favor of the nonmovant.
 
 See Duckett v. Wilson Hotel Mgmt. Co.,
 
 669 So.2d 977, 978 (Ala.Civ.App.1995).
 

 Moreover, both Adams and King testified that it had appeared to them that Turberville took no evasive action before striking Brittany, indicating that Turber-ville may have been preoccupied before the accident. Turberville argues that the physical evidence contradicts Adams’s and King’s testimony because it shows that the collision occurred on the right front fender. Turberville maintains that the accident occurred near the center line of the roadway and that, therefore, Turberville must have swerved or the damage to the automobile would have been more to the left side of the automobile. However, the testimony regarding Brittany’s exact location in relation to the center line of the roadway at the time of the collision was in dispute. Hence, the fact that the right front fender struck Brittany does not conclusively establish that Turberville turned
 
 *228
 
 her automobile to avoid the accident as she claims.
 

 The evidence in the record also creates a genuine issue of material fact as to whether Turberville was exceeding the speed limit at the time of the accident. Although we agree that Adams’s deposition testimony is too internally inconsistent to constitute substantial evidence indicating that Turberville was speeding,
 
 see McGough v. G & A, Inc.,
 
 999 So.2d 898, 906 (Ala.Civ.App.2007) (“A nonmovant cannot rely on deposition testimony that is internally inconsistent and contradictory to create a genuine issue of material fact.”), we find King’s testimony sufficient to submit the question to a jury. Alabama law has long held that a lay witness is competent to testify as to the speed of a passing automobile so long as the lay witness has had an ample opportunity to observe the automobile in motion.
 
 See Williams v. Roche Undertaking Co.,
 
 255 Ala. 56, 65-66, 49 So.2d 902, 909 (1951) (“An estimate of the speed at which an automobile, locomotive or other object was moving at a given time is generally viewed as a matter of common observation rather than expert opinion, and accordingly any person of ordinary ability and intelligence, having observed the speed, is qualified to testify as to its rate.”). When, as in this case, the witness had a brief opportunity to observe the speed of the vehicle, his or her opinion as to its speed remains admissible with “[t]he momentary observation going to the weight of the testimony.”
 
 Williams,
 
 255 Ala. at 65, 49 So.2d at 909 (citing
 
 Jack Cole, Inc. v. Walker,
 
 240 Ala. 683, 200 So. 768 (1941)). The fact that King testified that she was “guessing” as to the actual speed of the automobile does not render her estimate, which was based on her actual observance of the automobile, speculative.
 
 See
 
 Rule 701, Ala. R. Evid. (“If the witness is not testifying as an expert, the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness’s testimony or the determination of a fact in issue.”).
 

 We acknowledge that prior Alabama cases hold that a driver indisputably using due care while operating an automobile on a public roadway bears no liability for injuries to a minor child who suddenly darts into the driver’s right-of-way.
 
 See Tinsley v. Henderson,
 
 613 So.2d 1268 (Ala.1993);
 
 Hayles v. Johnson,
 
 366 So.2d 260 (Ala.1978); and
 
 Roueche, supra.
 
 In order to apply the rule of law arising from those cases, we would have to accept all Turber-ville’s testimony as true and ignore any controverting evidence. That we cannot do. Therefore, we reverse the summary judgment and remand the case for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P. J., and PITTMAN, BRYAN, and THOMAS, JJ„ concur.
 

 [1]
 

 . The complaint also staled a negligenl/wan-ton-entruslment claim against Wayne Turber-ville as the owner of the automobile. The trial court entered a summary judgment in favor of Wayne, and Rodgers has not appealed from that judgment.
 

 [2]
 

 . At the trial-court level, Rodgers did not oppose the summary judgment as to the wantonness claim, and she does not argue on appeal any error in regard to the entry of the summary judgment as to that claim.